IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| Wayne Viands,<br>    Plaintiff, | )<br>)<br>) | |
| v. | ) | 1:14cv506 (GBL/MSN) |
| | ) | |
| Dr. Katherine Laybourn,<br>    Defendant. | )<br>)<br>) | |

MEMORANDUM OPINION

This matter comes before the Court upon a Motion for Summary Judgment filed by the sole defendant remaining in the lawsuit, Dr. Katherine Laybourn.[1] Wayne Viands was a federal inmate confined in the Eastern District of Virginia when he filed this pro se civil rights action pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), claiming that his Eighth Amendment rights were violated by delay in obtaining treatment for his serious medical needs.[2] Defendant Dr. Laybourn filed her Motion for Summary Judgment, along with a supporting memorandum and exhibits, on October 3, 2014, and provided plaintiff with the appropriate notice required by Local Rule 7(K) and Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). Dkt. 16-18. In response, plaintiff submitted several letter/motions requesting the appointment of counsel and extensions of time to respond to defendant's motion. By Order dated May 27, 2015, the request for counsel was denied, and plaintiff was allowed an

---

[1] Plaintiff's claims against three additional defendants originally named in the complaint were dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915A(b)(1). Dkt. 8.

[2] On December 22, 2014, plaintiff notified the Court that he had been released from incarceration and is now residing in Harrisonburg, Virginia. Dkt. 26.

additional twenty-one (21) days within which to file his opposition to the summary judgment motion. Dkt. 27. Plaintiff filed no response. For the reasons that follow, defendant's Motion for Summary Judgment will be granted, and final judgment will be entered in her favor.

## I. Background

On September 17, 2012, plaintiff was injured while working at his assigned duty station at FCI Petersburg. As plaintiff was performing maintenance under the cab of a large tractor trailer truck, a hydraulic cable broke and the lid covering the engine fell on him. Compl. ¶ 9. As a result, plaintiff allegedly sustained injuries to his head, back, neck, right leg and right ankle. Compl. at 2; Am. Compl. at 5. The gravamen of his claim against Dr. Laybourn is that he was subjected to cruel and unusual punishment in violation of the Eighth Amendment when he was not treated immediately thereafter by a neurologist.[3] At this juncture, the following facts material to plaintiff's claim are undisputed.

Immediately after the accident, plaintiff was transported to the emergency room at John Randolph Medical Center in Hopewell, Virginia, for evaluation and treatment. Physicians there ran a series of tests, including CT scans of plaintiff's lumbar, thoracic and cervical spines and an x-ray of his right ankle. The x-ray revealed a fracture of plaintiff's right fibula, but the CT scans of his spine provided no evidence of acute trauma; rather, they showed only chronic issues such as degenerative disk disease and spondylosis consistent with plaintiff's age of sixty-two years. Plaintiff was discharged from the hospital and returned to FCI Petersburg that same day. Def. Ex. A-C. Later that day, a Mid-Level Practitioner ("MLP") at Petersburg submitted a request for

---

[3]Plaintiff states that his "complaint is about the delay and denial in getting [him] to a physician specialist neurologist for 8 months who could treat [his] serious injury.... Compl. ¶14.

plaintiff to be examined by an orthopedic specialist.

Four days later, on September 21, 2012, plaintiff was treated by an orthopedist contracted to provide service to inmates at Petersburg. Plaintiff's fractured right leg was placed in a cast. In addition, plaintiff informed the orthopedist that he was experiencing ringing in his ears and weakness in his left arm, and upon learning of these new symptoms the orthopedist recommended that plaintiff receive a CT scan of his head. Plaintiff was immediately returned to the off-site emergency room to obtain the test, and the results of the CT scan of his head showed no abnormalities. Def. Ex. A, ¶6; E-G.

On September 23 and 28 and October 11, 2012, plaintiff presented to the medical staff at FCI Petersburg with similar complaints of weakness, pain, and ringing in his ears. He received a variety of pain medications to help alleviate the symptoms. Def. Ex. A, ¶7; H.

Plaintiff was seen for a follow-up evaluation by the orthopedist on October 12, 2012. At that time the orthopedist recommended that the cast on plaintiff's right leg be removed, that he be placed in a stirrup brace, and that he begin to put weight on the ankle. An x-ray was taken which revealed that the fractured fibula was healing properly. Def. Ex. I-J.

Plaintiff presented to medical staff at Petersburg with continuing complaints of pain and numbness in his arms on October 26 and November 14 and 29, 2012. Despite the earlier negative results of the CT studies, the MLP performed a number of physical tests on plaintiff in an attempt to rule out other possible causes for his symptoms. They revealed that plaintiff had full range of motion in his wrists, hands, and fingers, and that his neurovascular system was intact. Def. Ex. K.

Plaintiff was seen by the orthopedist again on November 25, 2012. Because plaintiff

continued to complain of pain and weakness, and because the orthopedist could find no medical reason for such symptoms, he recommended that plaintiff be evaluated by a neurologist. The recommendation contained no suggestion that the need for such an evaluation was an emergency. An MLP submitted a request for an outside neurological consultation to Dr. Laybourn, who approved it the same day. On January 17, 2013, FCI Petersburg's Utilization Review Committee ("URC") approved the request. Def. Ex. A ¶¶ 8-10; M. During the same period, medical staff at FCI Petersburg evaluated plaintiff on four separate occasions for varying symptoms, including pain; on each occasion, tests including physical examinations and another x-ray of plaintiff's shoulder revealed no acute cause for any of plaintiff's complaints. Accordingly, staff continued to treat the symptoms with appropriate medications. Def. Ex. N.

Plaintiff was seen by an off-site neurologist on April 9, 2013. The neurologist requested an MRI of plaintiff's cervical spine and an EMG (electromyogram/nerve conduction) study of his arms and left leg. The URC approved the request on April 18, 2013, and the spinal MRI was performed on April 25, 2013. Consistent with the earlier CT scans, it revealed only chronic degenerative conditions consistent with plaintiff's age. Def. Ex. Q. The EMG was done when plaintiff returned to the neurologist for a follow-up evaluation on June 6, 2013. The neurologist determined and informed FCI Petersburg medical staff that the sole abnormality detected was a mild carpel tunnel syndrome; otherwise, the test did not reveal any pinching or inflammation of cervical nerves ("cervical radiculopathy") or disease process involving the peripheral nerves ("polyneuropathy"). Def. Ex. A, ¶ 14; R.

Plaintiff had another follow-up visit with the neurologist on September 23, 2013. Examination at that time revealed that plaintiff had full range of motion in his cervical spine, and

he did not complain of any spasms or tenderness. The neurologist concluded and so informed Petersburg medical staff that all neurological tests had been unremarkable, and that plaintiff required no further neurological evaluation. Def. Ex. S.

## II. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that judgment on the pleadings is appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (moving party bears the burden of persuasion on all relevant issues). To meet that burden, the moving party must demonstrate that no genuine issues of material fact are present for resolution. Id. at 322. Once a moving party has met its burden to show that it is entitled to judgment as a matter of law, the burden then shifts to the non-moving party to point out the specific facts which create disputed factual issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the non-moving party. Matsushita, 475 U.S. at 587.

## III. Analysis

At this juncture, it is apparent that Dr. Laybourn is entitled to the summary judgment she seeks. To establish an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate facts sufficient to show that jail officials were deliberately indifferent to a serious medical need. Estelle v. Gamble, 429 U.S. 97, 105 (1976); Staples v. Va. Dep't of Corr., 904 F.Supp. 487, 492 (E.D.Va. 1995). Thus, a plaintiff must establish two distinct elements. First, he must show that the deprivation of a basic human need was objectively sufficiently serious. This prong is met only when the medical condition at issue is a serious one; that is, a condition "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Shelton v. Angleone, 183 F.Supp. 2d 830, 840 (W.D. Va. 2002) (quoting Cox v. Dist. of Columbia, 834 F.Supp. 439, 441 (D.D.C. 1992); see e.g., Cooper v. Dyke, 814 F.2d 941, 945 (4th Cir. 1987) (determining that intense pain from an untreated bullet wound is sufficiently serious); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978) (concluding that the "excruciating pain" of an untreated broken arm is sufficiently serious).

Second, the plaintiff must demonstrate that the official was subjectively sufficiently culpable; that is, that he displayed deliberate indifference "by either actual intent or reckless disregard." Estelle, 429 U.S. at 106; Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). To do so, plaintiff must show that the defendant's actions were "[s]o grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Id. (citations omitted). Put another way, plaintiff must establish that the official "knows of and disregards an excessive risk to inmate health or safety; the official must be both aware of facts

from which the inference could be drawn that a substantial risk of harm exists, and he must also draw that inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Thus, "questions of medical judgment," "disagreement between an inmate and medical personnel regarding diagnosis and course of treatment," and "mere malpractice" do not constitute deliberate indifference. Davis v. Lester, 156 F.Supp. 2d 588, 598 (W.D. Va. 2001).

A delay in medical treatment may constitute deliberate indifference. See Smith v. Smith, 589 F.3d 736, 739 (4th Cir. 2009) (citing Estelle, 429 U.S. at 104-05). A constitutional violation only occurs, however, if the delay results in some "substantial harm" to the patient. Thus, in addition to demonstrating that the medical need at issue is objectively serious, the plaintiff also must show that the delay in the provision of medical care resulted in objectively "substantial harm" in order to establish an Eighth Amendment violation. See Webb v. Hamidullah, 281 Fed. App'x. 159, 166 (4th Cir. 2008) (unpublished decision); Shabazz v. Prison Health Servs., No. 3:10cv190, 2011 WL 2489661, at *6 (E.D. Va. Aug. 9, 2011). "The substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain." Shabazz, 2011 WL 2489661, at *6; see also, Webb, 281 Fed. App'x at 167 (substantial harm may be evidenced by an "marked increase in hernia[] size, frequent complaints of severe pain, or signs that [] hernia was becoming non-reducible").

It is readily apparent that plaintiff's claim in this case founders on both elements of the foregoing analysis. As to the objective component, any delay in obtaining neurological evaluation for plaintiff cannot have caused him to suffer "significant harm" because after three examinations by the neurologist and two neurological studies obtained by the BOP at his request, the neurologist concluded that plaintiff's symptoms were not caused by any neurological

7

abnormality. As such, the neurologist did not provide or prescribe any treatment regimen for plaintiff additional to what plaintiff was receiving from the Petersburg medical staff. Because the neurologist never diagnosed plaintiff with a neurological condition nor provided him with neurological intervention, the timing of plaintiff's neurological consultations cannot have caused him any harm whatever. See Kelly v. Jamaludeen, 2013 WL 6713164, at *7 (E.D. Va. Dec. 18, 2103) (plaintiff failed to establish that delay in referral to an orthopedist caused "substantial harm" where the specialist recommended no new treatment).

Plaintiff's claim against Dr. Laybourn also fails on the subjective component. He has come forward with nothing to suggest, much less to establish, that Dr. Laybourn was personally responsible for any alleged delay in referring him to a neurologist. Nor is there any suggestion that Dr. Laybourn actually believed that plaintiff needed immediate neurological treatment but disregarded that fact to plaintiff's detriment. To the contrary, as discussed above, immediately after plaintiff suffered his accident, he was transported to local emergency room where he received evaluation and treatment. The studies and scans that were performed at that time showed no acute trauma. Later when a cranial CT scan was obtained pursuant to a request by the orthopedist, it too revealed no abnormalities. Numerous physical examinations of plaintiff performed by the medical staff at Petersburg throughout this period all revealed an intact neurological presentation. Nothing in this record would or could have put Dr. Laybourn on notice that plaintiff was in need of immediate evaluation or treatment by a neurologist, and she consequently cannot have been deliberately indifferent to such a need. Accordingly, plaintiff's claim that his Eighth Amendment rights were violated by Dr. Laybourn fails. Cf. Farmer, 511

U.S. at 837.[4]

## IV. Conclusion

For the foregoing reasons, defendant's Motion for Summary Judgment will be granted, and judgment will be entered in her favor. An appropriate Order and judgement shall issue.

Entered this \_\_8th\_\_ day of \_\_September\_\_ 2015.

Alexandria, Virginia

_____/s/_____
Gerald Bruce Lee
United States District Judge

---

[4]Because the defendant has established her entitlement to judgment as a matter of law on plaintiff's claims of deliberate indifference, it is unnecessary for the Court to address her argument on the issue of qualified immunity.

9